**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Abbott Laboratories and<br>St. Jude Medical S.C. Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Chad Amato and<br>Impulse Dynamics USA, Inc.,<br><br>Defendants. | ) | No. 26 C 11561<br><br>Judge Jorge L. Alonso |

**MEMORANDUM OPINION AND ORDER**

After Defendant Chad Amato resigned from his employment at Abbott Laboratories and began working for Defendant Impulse Dynamics, Plaintiffs (collectively, "Abbott") brought this lawsuit alleging misappropriation of trade secrets. Defendants move to dismiss. For the reasons stated below, the motion to dismiss is denied.

**Background**

Abbott produces medical devices for cardiac rhythm management ("CRM"). R. 1 ¶ 23. The CRM market is competitive, and Abbott invests substantial resources into developing relationships with physicians, hospitals and healthcare systems that use Abbott's CRM devices. *Id.* ¶¶ 25–29. In operating its CRM business, Abbott develops confidential information and trade secrets related to revenue, pricing, purchasing patterns, physician training, product launches, developmental products, and more. *Id.* ¶ 31. Abbott also invests substantial resources into protecting its confidential information and Abbott's employees must agree to not disclose the information outside the scope of their employment, and, where applicable, to accept certain post-employment non-compete restrictions. *Id.* ¶¶ 34–37.

Amato worked for Abbott from 2010 through 2026. *Id.* ¶¶ 41–42. At the time he was hired, and throughout his employment, Amato was a resident of Arizona. *Id.* ¶ 1. By 2020, Amato led Abbott's West Coast CRM business, and he had access to confidential information to perform his job. *Id.* ¶¶ 44–45. As relevant, Abbott and Amato entered into an "Employment Agreement" in February 2018. *Id.* ¶ 49. Among other restrictions, the Employment Agreement barred Amato, for twelve months after leaving Abbott, from providing services to competing businesses where the services are similar in function to the services he provided Abbott. *Id.* ¶ 56. The Agreement also included an Illinois choice-of-law clause and Illinois forum-selection clause. *Id.* ¶¶ 63–64.

Amato resigned from Abbott on September 1, 2026. *Id.* ¶ 83. In the year before his resignation, Amato forwarded certain confidential information to his personal email account. *Id.* ¶¶ 67–72. In the month before his resignation, Amato accessed certain confidential information on Abbott's internal databases. *Id.* ¶ 74. Also, in the month before his resignation, Amato sent Impulse his Employment Agreement, and he had an "Intro Meeting" with Impulse. *Id.* ¶¶ 77–79. Finally, in the month before his resignation, Amato moved from Arizona to California. *See* R. 11-3 at 4. On September 1, 2026, the same day that Amato resigned from Abbott, he began employment with Impulse, and he also filed a lawsuit in the Central District of California seeking an injunction to bar Abbott from enforcing certain sections of the Employment Agreement. R. 1 ¶¶ 83–86.

Abbott filed this lawsuit in the Northern District of Illinois on September 21, 2026 and brings claims against Amato for breach of the Employment Agreement, against Impulse for tortious interference with the Agreement, and against both for misappropriation of trade secrets. *Id.* ¶¶ 120–61. Abbott alleges that Impulse is a competitor in the CRM market, and, on information and belief, that Amato has used and continues to use Abbott's confidential information to further Impulse's business interests. *Id.* ¶¶ 94, 97–99. Defendants now move to dismiss. R. 10.

## Discussion

### 1. Personal Jurisdiction

Personal jurisdiction is "waivable" and "parties can, through forum selection clauses and the like, easily contract around [it]." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) (citations omitted). As such, a "valid forum-selection clause, even standing alone, can confer personal jurisdiction." *Id.* (citations omitted). Where a clause uses "mandatory language specifying that disputes under the contract 'shall' or 'will' be litigated in a specific venue or forum," such mandatory language establishes "exclusive" jurisdiction in that forum. *AC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022). Here, the Employment Agreement contains the following:

> The parties agree to the exclusive jurisdiction of the state and federal courts in Illinois, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby, and further irrevocably agree that all claims in any such action or proceeding shall be heard and determined in Lake County, Illinois state court or the Northern District of Illinois federal court. Both parties waive any objection to the laying of venue of any such action or proceeding in any of the Lake County, Illinois state courts or Northern District of Illinois federal courts, as well as any claim that a party may have that any such action or proceeding has been brought in an inconvenient forum. EMPLOYEE stipulates and consents to Illinois courts' personal jurisdiction and waives the right to object to an Illinois court's jurisdiction.

R. 1-1 at 8. The Court finds that the above forum selection clause contains mandatory language sufficient to establish the parties' intent to establish exclusive jurisdiction in Illinois.

Defendants argue that the forum selection clause is invalid under California Labor Code § 925(a) which provides, in relevant part, that an "employer shall not require an employee who primarily resides and works in California to, as a condition of employment . . . adjudicate outside of California claims arising in California." But courts have consistently limited this statute to apply only if the employee lived in California "at the time he entered the agreements." *See, e.g., Dixon*

*v. Perry*, 2025 WL 3699389, at *5 (C.D. Cal. Dec. 12, 2025) (finding that § 925(a) did not apply because the plaintiff "either did not primarily reside in California at the time he entered the agreements or because he did not primarily work in California"); *see also Build Grp., Inc. v. N.R. Windows, Inc.*, 2022 WL 3697355, at *5 (C.D. Cal. Feb. 17, 2022) (finding that § 925(a) did not apply because the plaintiff "[did] not allege that he *was* a California resident working in California at the time the Agreements were executed"); *Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, 2017 WL 417193, at *7 (C.D. Cal. Jan. 31, 2017) (finding that § 925(a) did not apply because when "[the employee] and Defendant agreed to the non-compete agreement containing the forum selection clause, [the employee] was not 'primarily residing and working in California'"). In this case, Amato was living in Arizona when he entered the Employment Agreement, not in California. As such, the Court finds that California Labor Code § 925(a) does not invalidate the forum selection clause.

Defendants also argue that the forum selection clause is invalid under California Business and Professions Code § 16600, which in general voids non-compete agreements in California. But this argument fails, because as courts have held, "the only relevant consideration is whether the forum clause selection clause itself violates California's public policy, not the agreement in which it appears." *Mechanix Wear, Inc.*, 2017 WL 417193, at *7. And courts have "repeatedly and definitely foreclosed the [argument] that California's public policy against non-compete agreements renders forum selection clauses in those agreements unreasonable." *Id.*; *see also Jacobi v. Acrisure, LLC*, 2026 WL 2491209, at *7 (C.D. Cal. Aug. 25, 2026) ("California's strong public policy prohibiting contracts in restraint of trade is inapplicable to the enforcement of this forum-selection clause."). As such, the Court finds that California Business and Professions Code § 16600 does not invalidate the forum selection clause.

The Court notes that while Amato is a party to the Employment Agreement, Impulse is not. That said, the forum selection clause covers "any action or proceeding arising out of or relating" to the Employment Agreement, and there is no dispute that this case arises out of the Agreement. Abbott, for example, brings a claim against Impulse for tortious interference with the Agreement. The Court thus finds, pursuant to the forum selection clause, that it has personal jurisdiction over both Defendants.[1]

**2. First-to-File Rule**

Defendants argue for dismissal based on the first-to-file rule. When duplicative actions are filed in different federal courts, the first-to-file rule establishes a "presumption" that "the first case should be allowed to proceed and the second should be abated." *Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*, 892 F.2d 566, 573 (7th Cir. 1989). The first-to-file rule provides "guidance" to "courts seeking to avoid duplicative litigation" and "is consistent with considerations of judicial and litigant economy." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1008 (N.D. Ill. 2009) (citations omitted). The first-to-file rule, however, is a "rebuttable presumption," and the Seventh Circuit does "not rigidly adhere to [it]." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980–81 (7th Cir. 2010) (explaining that the rule is a "guiding principle left to the discretion of the district court"). Indeed, the Seventh Circuit has articulated different situations that warrant departure from the rule.

[1] In the lawsuit filed by Amato in the Central District of California, *Amato v. Abbott*, 8:26-cv-2504-SVW-ADS, Amato moved for a temporary restraining order to bar Abbott from enforcing the forum selection clause of the Employment Agreement under California Labor Code § 925(a) and California Business and Professions Code § 16600. The California court denied Amato's motion on the basis that Amato was unlikely to succeed on the merits. For similar reasons as discussed above, that court found that California Labor Code § 925(a) and California Business and Professions Code § 16600 did not invalidate the forum selection clause. A copy of the California court's decision has been filed by the parties on this Court's docket at R. 25-1.

First, courts have departed from the first-to-file rule "where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief," and courts should "give priority to the coercive action, regardless of which case was filed first." *Id.* Indeed, giving priority to the coercive action will generally comport with judicial economy as the coercive action is likely to cover a broader range of issues and will thus be "the best vehicle for resolving all of the disputes between the parties." *See Bogard v. Watchfire Signs LLC*, 2016 WL 3940117, at *2 (N.D. Ill. July 21, 2016) (favoring second-filed case as "the best vehicle for resolving all of the disputes between the parties"). This case presents exactly that situation. The California action is a declaratory judgment action that seeks limited declaratory and injunctive relief to invalidate certain provisions of the Employment Agreement while this action is a coercive action that seeks broader affirmative relief for breach of contract, tortious interference with contract, and misappropriation of trade secrets.

Second, courts have "departed from a first-to-file rule where one party files its lawsuit in anticipation of an impending suit by the opposing party." *Research Automation Inc.*, 626 F.3d at 980. In other words, if "a plaintiff files an action 'in the face of a clear threat' that the opposing party will sue, a court will dismiss a first-to-file argument." *Id.* (citing *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004)). Again, this case presents exactly that situation. Defendants filed the California action on the same day that Amato started at Impulse. These facts indicate that Defendants filed the California action in anticipation of a lawsuit by Abbott, based on fear of Abbott's enforcement of the Employment Agreement, before Abbott even threatened enforcement or could determine whether litigation was warranted.

For these reasons, the Court exercises its discretion and departs from the first-to-file rule. The Court thus declines to dismiss this action based on the first-to-file rule.

### 3. Transfer

In the alternative to dismissal, Defendants seek a change of venue under 28 U.S.C. § 1404. "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Normally, when a court analyzes whether to transfer a case under § 1404(a), it considers both the parties' private interests and the public's interest." *SP Plus LLC v. Diniz*, 2025 WL 1836035, at *1 (N.D. Ill. July 3, 2025). But, when "parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013); *see also Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990) ("A party can seek to rescind a forum selection clause, as the defendants have sought to do here, but if the attempt fails and the clause is held to be valid, then section 1404(a) may not be used to make an end run around it."). As such, when there is a forum selection clause, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Altantic Marine*, 571 U.S. at 64. Courts then weigh "the public interest, which relates to the 'efficient administration of the court system.'" *SP Plus LLC*, 2025 WL 1836035 at *2 (citing *Research Automation Inc.*, 626 F.3d at 978).

Here, given the forum selection clause, the Court finds that the private interests weigh entirely in favor of this forum. As discussed above, this case is the broader action and is better suited to resolve all disputes between the parties. As such, the Court finds that the public interest of efficient administration also weighs in favor of this forum. For these reasons, the Court denies Defendants' request to transfer the case under 28 U.S.C. § 1404.

## Conclusion

For the foregoing reasons, Defendants' motion [10] to dismiss is denied. The in-court status hearing shall remain set for 10/8/26 at 11:00 am.

**SO ORDERED.** **ENTERED: October 8, 2026**

**HON. JORGE L. ALONSO**
**United States District Judge**